UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JAMES LONG,

        Petitioner,

v.                                                Case No:  6:20-cv-1245-RBD-RMN
                                                      (6:16-cr-180-RBD-RMN)

UNITED STATES OF AMERICA,

        Respondent.
_____/

## ORDER

THIS CAUSE is before the Court on Petitioner James Long's Amended Motion to Vacate, Set Aside, or Correct Sentence ("Amended Motion to Vacate," Doc. 9) filed under 28 U.S.C. § 2255. Respondent filed a Motion to Dismiss the Amended Motion to Vacate ("Motion to Dismiss," Doc. 14), a Supplemental Response to the Amended Motion to Vacate ("Supplemental Response," Doc. 18), and a Second Supplemental Response to the Amended Motion to Vacate ("Second Supplemental Response," Doc. 20) in compliance with this Court's instructions. Petitioner filed a Response to the Motion to Dismiss ("Response," Doc. 16) and a Reply to the Supplemental and Second Supplemental Response ("Reply," Doc. 21).

Petitioner asserts four grounds for relief.[1] For the following reasons, the Amended Motion to Vacate is denied.

## I. PROCEDURAL HISTORY

The Government charged Petitioner by Information with conspiracy to commit money laundering (Count One) in violation of 18 U.S.C. § 1956. (Criminal

---

[1] Petitioner raises four grounds of ineffective assistance of counsel based on counsel's (1) failure to investigate the pain clinic and discover the roles of co-conspirators, which would have established Petitioner's involvement was minor and prevented counsel from convincing Petitioner to plead guilty (Ground One); (2) conflict of interest - namely, Petitioner's inability to pay counsel additional fees because Petitioner's account was seized by the Government - during the pretrial stages, which caused Petitioner to enter a plea earlier than he should have and resulted in a harsher sentence (Ground Two); (3) failure to assist Petitioner in allocuting at the sentencing hearing (Ground Three); and (4) failure to file a notice of appeal where "the Court's final order contradicted its stipulations and instructions given to the Government at [Petitioner's] sentencing hearing" and failure to ensure the statute of limitations did not expire before Petitioner's co-conspirators were charged, which resulted in a flawed strategy to pursue substantial assistance under Rule 35 (Ground Four). (Doc. 9 at 1-20.)

It is not clear to which "final order" and "stipulations and instructions" Petitioner refers in Ground Four. It appears Petitioner may be referring to the Court's statements to the Government before the final sentencing hearing indicating *inter alia* that a conspiracy consists of at least two people and that the Court could not sentence Petitioner without knowing the scope of the conspiracy and Petitioner's role in the conspiracy vis-à-vis the other co-conspirators. *See* Criminal Case, Doc. 89 at 4-8. Petitioner also seems to reference the Judgment with the term "final order." *See* Doc. 9 at 19-20. Relying on the Court's pre-sentencing statement, Petitioner essentially complains that he could not have been convicted of the offense because a conspiracy requires at least two individuals. *See* Doc. 9 at 19-20. Petitioner further argues that because no one else was ever charged in relation to the conspiracy, his plea is null and presumably the Judgment cannot stand. (*Id.*) Specifically, Petitioner states "[c]ounsel knew right away that this order negated the poorly timed plea at sentencing." (*Id.* at 20.) The Court, therefore, assumes Petitioner is referring to the Judgment in Ground Four.

Case No. 6:16-cr-180-RBD-RMN, Doc. 1.)[2] Pursuant to a plea agreement, Petitioner waived prosecution by indictment and entered a plea of guilty before Magistrate Judge Gregory J. Kelly. (Criminal Case, Doc. Nos. 2, 3, 27, 107.) Magistrate Judge Kelly filed a Report and Recommendation, recommending that the plea be accepted and that Petitioner be adjudicated guilty of Count One. (Criminal Case, Doc. 30.) The Court accepted the plea and adjudicated Petitioner guilty of the offense. (Criminal Case, Doc. 34). On February 2, 2017, the Court sentenced Petitioner to a 180-month term of imprisonment and entered judgment. (Criminal Case, Doc. 87). Petitioner did not appeal.

On May 20, 2019, Petitioner, through his trial counsel A. Brian Phillips ("Phillips"), filed a Motion to Compel the Government to File a Rule 35 Motion ("Motion to Compel"). (Criminal Case, Doc. 92.) The Court denied the Motion to Compel on July 8, 2019. (Criminal Case, Doc. 95.) Petitioner, proceeding *pro se*, initiated this action under the mailbox rule on July 7, 2020.[3] (Doc. 1.)

---

[2] Criminal Case No. 6:16-cr-180-RBD-RMN will be referred to as "Criminal Case."

[3] *See Washington v. United State*s, 243 F.3d 1299, 1301 (11th Cir. 2001) (*pro se* prisoner's § 2255 motion is deemed filed the date it is delivered to prison authorities for mailing which, absent evidence to the contrary, will be presumed to be the date the document was signed by the prisoner).

3

## II. ANALYSIS

**A. Timeliness**

The time to file a motion to vacate, set aside, or correct a sentence is limited as follows:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of --
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)-(4). The statute of limitations applies on a claim-by-claim basis. *Zack v. Tucker*, 704 F.3d 917, 918 (11th Cir. 2013). "Typically, the applicable triggering date is 'the date on which the judgment of conviction becomes final.'" *Beeman v. United States*, 871 F.3d 1215, 1219 (11th Cir. 2017) (quoting 28 U.S.C. § 2255(f)(1)).

Under § 2255(f)(1), Petitioner had one year from the date his conviction became final to file a § 2255 motion. The Judgment was entered on February 2,

4

2017, and Petitioner did not file a direct appeal. Therefore, his conviction became final on February 16, 2017, when the time for filing an appeal expired. *See Mederos v. United States*, 218 F.3d 1252, 1253 (11th Cir. 2000) (a conviction which is not appealed becomes final when the time allowed for filing an appeal expires); *see also* Fed. R. App. P. 4(b). Thus, under § 2255(f)(1), Petitioner had through February 16, 2018, to file his § 2255 motion. Petitioner, however, initiated this action on July 7, 2020, more than two years after the limitation period expired under § 2255(f)(1).

Petitioner does not argue that the remaining provisions of 28 U.S.C. § 2255(f) are applicable. *See* Doc. 16. Construing Petitioner's arguments liberally, however, the Court will consider whether Petitioner's claims are timely under § 2255(f)(4). Petitioner further argues that he is entitled to equitable tolling. Consequently, the Court also will consider whether Petitioner is entitled to equitable tolling.

> As explained by the Eleventh Circuit,
>
> under § 2255(f)(4), the statute of limitations "is triggered by a date that is not necessarily related to a petitioner's actual efforts or actual discovery of the relevant facts." 291 F.3d 708, 711 (11th Cir. 2002). In conducting the inquiry under § 2255(f)(4), the district court should first consider whether the petitioner exercised due diligence. *Id.* If the court finds that he did so, then the one-year limitations period begins to run on the date he actually discovered the relevant facts because the dates of actual and possible discovery would be identical. *Id*. But:
>
>> [I]f the court finds that the petitioner did *not* exercise due diligence, the statute does not preclude the possibility that the petitioner's motion could still be timely under § 2255[f](4). For example, if the court concludes that, with the exercise of due diligence, the relevant facts could

5

> have been discovered two months earlier than the petitioner (who it finds did not exercise due diligence) actually discovered them, then the motion would still be timely if filed within ten months of the date of actual discovery.
>
> *Id.* (emphasis in original). Accordingly, if the district court finds that the petitioner did not exercise due diligence, it is required to speculate about the date on which the facts could have been discovered with the exercise of due diligence. *Id.* at 711 n. 1.
>
> Due diligence "does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts." *Id.* at 712. The due diligence inquiry is an individualized inquiry that "must take into account the conditions of confinement and the reality of the prison system." *Id.* (citation omitted).

*Dauphin v. United States*, 604 F. App'x 814, 817-18 (11th Cir. 2015) (quoting *Aron v. United States*, 291 F.3d 708, 711 (11th Cir. 2002)).

Likewise, the Supreme Court of the United States has held that the AEDPA's one-year statutory limitation period set forth in "§ 2244(d) is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). Equitable tolling is appropriate when a petitioner demonstrates: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also see also Sandvik v. United States*, 177 F.3d 1269, 1271–72 (11th Cir. 1999) (holding that the same equitable tolling principles that are applied to 28 U.S.C. § 2244's statute of limitations apply equally to § 2255). "The

diligence required for equitable tolling purposes is 'reasonable diligence,'. . . 'not maximum feasible diligence. . . .'" *Id.* at 653 (internal quotations and citations omitted). A petitioner must "show a causal connection between the alleged extraordinary circumstances and the late filing of the petition." *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011). "[T]he reasonable diligence and extraordinary circumstance requirements are not blended factors; they are separate elements, both of which must be met before there can be any equitable tolling." *Cadet v. Fla, Dep't of Corr.*, 853 F.3d 1216, 1225 (11th Cir. 2017) (citing *Menominee Indian Tribe of Wisc. v. United States*, 577 U.S. __, 136 S. Ct. 750, 757 n.5 (2016)).

"[A]ttorney negligence, even gross or egregious negligence, does not by itself qualify as an 'extraordinary circumstance' for purposes of equitable tolling; either abandonment of the attorney-client relationship, such as may have occurred in *Holland*, *or* some other professional misconduct *or* some other extraordinary circumstance is required." *Id.* at 1227 (emphasis in original). "'[B]ad faith, dishonesty, divided loyalty, [and] mental impairment' . . . may . . . serve as extraordinary circumstances that support a claim to equitable tolling." *Thomas v. Att'y Gen., Fla.*, 795 F.3d 1286, 1292 (11th Cir. 2015) (quoting *Holland v. Florida*, 539 F.3d 1334, 1339 (11th Cir. 2008), *rev'd on other grounds*, *Holland*, 560 U.S. 631).

The Eleventh Circuit has held that:

> It is well settled that "[t]he burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner." *San Martin,* 633 F.3d at 1268. A petitioner "must plead or proffer enough facts that, if true, would justify an evidentiary hearing on the issue." *Hutchinson v. Florida,* 677 F.3d 1097, 1099 (11th Cir. 2012). "And the allegations supporting equitable tolling must be specific and not conclusory." *Id.* In light of the petitioner's burden, district courts are not "required to mine the record, prospecting for facts that the habeas petitioner overlooked and could have, but did not, bring to the surface." *Chavez,* 647 F.3d at 1061.

*Lugo v. Sec'y, Fl. Dep't of Corr.*, 750 F.3d 1198 (11th Cir. 2014).

The Court finds that Petitioner has not shown that he exercised due diligence in discovering the facts underlying his claims or in pursuing his rights. Petitioner does not specify when he learned the facts underlying his claims. Nevertheless, as discussed below, the facts supporting Grounds One through Three either were known or could have been known to Petitioner with reasonable effort by February 16, 2017, the date that Petitioner's conviction became final. Likewise, the facts supporting Ground Four could have been known by Petitioner with reasonable diligence by June 29, 2018, at the latest.

To support his request for equitable tolling, Petitioner posits numerous reasons why he was unable to timely discover his claims and timely initiate this action. *See* Doc. 16. Some of these arguments relate to when Petitioner discovered the facts supporting Ground Four and possibly Grounds One through Three. The Court, therefore, will consider these arguments in determining whether Petitioner exercised due diligence. Specifically, Petitioner contends that he was "continually

8

mislead [sic] and thwarted from [filing a § 2255 motion] by [Phillips]. . . and his ineffective assistance of counsel, [Phillips'] failure to independently investigate any portion of this case, [Phillips' failure] to demand 'formal' discovery material and/or possible prosecutorial misconduct. . . ." (Doc. 16 at 20.) Petitioner offers a litany of arguments to support these contentions.

First, Petitioner alleges that he was unaware that Phillips, who was a former Assistant United States Attorney ("AUSA"), had a conflict of interest because Phillips had a long standing personal and professional relationship with AUSA David Haas ("Haas"), the first AUSA assigned to Petitioner's case. (Doc. 16 at 6-7.) Although Petitioner knew that Phillips was a former AUSA when he retained him, *see id*. at 6, Petitioner maintains that Phillips "intentionally and unethically failed to inform" Petitioner of the relationship, continued to negotiate with Haas for approximately two years between 2013 and 2015, and was grossly negligent for failing to obtain a written agreement from the Government for Petitioner's cooperation during that time. (*Id.* at 6-7.) According to Petitioner, the conflict caused Phillips to rely on Haas's skewed representations and not to request discovery materials that would have disproven Haas's representations and established there were no other co-defendants. (*Id.* at 7.) Petitioner notes that in 2015 Phillips told him that Haas "'elected' to go into private practice[,]" but Petitioner "later" learned that Haas may have "been involved in a 'conflict of

9

interest' and was removed from [Petitioner's] case and only then left the USAO in Orlando." (*Id.* at 8.)

All these allegations, if true, could have been discovered with due diligence at the latest by the date that Petitioner's conviction became final on February 16, 2017. Petitioner knew that Phillips was a former AUSA in Orlando where Haas worked. Furthermore, Petitioner knew in 2015 that Haas had left the United States Attorney's Office ("USAO") and was no longer handling this case. It is purely speculation that Haas was removed from Petitioner's case, which prompted him to leave the USAO. Nevertheless, Petitioner clearly knew at the time of sentencing that there were no written agreements from the period of Phillips' and Haas's negotiations related to Petitioner's cooperation and that there were no other co-defendants who had been charged. Consequently, with reasonable efforts Petitioner could have learned about Phillips' and Haas's relationship and Phillips' attendant "misconduct" by the time Petitioner was sentenced in 2017.

Petitioner next notes that in April 2017, he "made several inquiries to. . . Phillips concerning any appeal options in this case" but was never informed that he could file a § 2255 motion alleging prosecutorial misconduct or ineffective assistance of counsel. (Doc. 16 at 13.) He complains that Phillips and "others" repeatedly advised him that "he had waived his right to file 'any appeals' based on the [sentence appeal waiver provision in the] plea agreement[.]"(*Id.* at 13-14.)

10

Petitioner contends that Phillips told him he would have to withdraw as his attorney if Petitioner chose to file an appeal because it would create a conflict of interest. (*Id.* at 14.) Petitioner avers that Phillips "intentionally prevaricated the § 2255 motion issue[,]" and instead suggested that Petitioner "should again attempt to cooperate with the government and then apply for a Rule 35 consideration." (*Id.*)

According to Petitioner, Phillips later "'volunteered' to prepare a request for a Rule 35 based on [Petitioner's September 2017] interview with AUSA Rivera-Miranda" in lieu of advising Petitioner within his one-year limitation period about the § 2255 option. (*Id.* at 15.) Petitioner alleges that AUSA Rivera-Miranda engaged in prosecutorial misconduct by intimating at the September 2017 proffer that there were "other defense attorneys" when there in fact was only one co-conspirator who was offered a plea deal, which he did not take and allowed the statute of limitations to expire. (*Id.* at 16-17.) In short, Petitioner argues he was unaware of Phillips' egregious behavior in Petitioner's prosecution and sentencing, and as a result, he agreed to proffer again with the Government, and Phillips' conduct prevented him from timely filing this action.

Petitioner fails to assert (1) when Phillips volunteered to prepare the Motion to Compel, (2) any steps he (Petitioner) took after his final proffer in September 2017 to discover whether the Government's intended to file a Rule 35(b) motion or

11

prosecute any of his co-conspirators, (3) why he (Petitioner) did not pursue the matter with the Government or the Court until more than two years after he was sentenced, or (4) why he was prevented from doing so, regardless of Phillips's purported advice. Moreover, there is no indication that Petitioner made any efforts from February 16, 2017, through July 1, 2019, to discover his right to collaterally challenge his conviction and sentence via § 2255, aside from asking Phillips about his appeal options.

With respect to Phillips' purported advice concerning Petitioner's "appeal options," the Court finds it is highly questionable that Phillips had a duty to notify Petitioner about his right to file a § 2255 motion. Per Petitioner's allegations, he inquired about his appeal options several times in early to mid-April 2017,[4] after he was sentenced in February 2017. Most of Phillips' purported responses to Petitioner's "appeal options" inquiries were logical and in accordance with the terms of the plea agreement, Petitioner's representations at the plea hearing, and the defense's strategy, as discussed at sentencing, that Petitioner intended to continue to cooperate with the Government to try to obtain a Rule 35(b) sentence

---

[4] The Court advised Petitioner on February 2, 2017, that he had fourteen days from that date or the entry of judgment, the later of which, to appeal his conviction and sentence. *See* Criminal Case, Doc. 90 at 49. Petitioner fails to explain why he waited until early to mid-April 2017 to inquire of Phillips about his appeal options. By that time, Petitioner's time to appeal clearly had expired.

reduction.

For instance, the plea agreement contained an appeal waiver provision that limited Petitioner's ability to appeal his sentence, except in four limited circumstances, none of which were applicable in this case. [5] *See* Criminal Case, Doc. 3 at 16-17. In addition, the plea agreement included a provision that the Government would consider whether any cooperation Petitioner provided after sentencing warranted a sentence reduction, and if so, file a Rule 35(b) motion "*within one year of the imposition of sentence*[.]" (*Id.* at 5) (emphasis added). Petitioner told the Court at the plea hearing that he had read the entire plea agreement and understood the sentence appeal waiver and Rule 35(b) provisions. (Criminal Case, Doc. 107 at 11, 18-20.)

Furthermore, although a defendant who enters a plea of guilty may attack the voluntary and knowing nature of the plea, *see Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992), no basis existed on which to challenge the plea in this

---

[5] Petitioner asserts that the sentence appeal waiver provision was misleading. (Doc. 16 at 10.) According to Petitioner, the sentence appeal waiver provision prohibited him from appealing the plea and sentence on any ground. (*Id.*) Petitioner further complains that the Government and Phillips failed to explain the possible ramifications of the provision and nefariously omitted the language "except for ineffective assistance of counsel or prosecutorial misconduct." (*Id.*) The sentence appeal waiver provision, however, did not prohibit Petitioner from appealing his plea nor did it preclude him from appealing his sentence within certain parameters. *See* Criminal Case, Doc. Nos. 3 at 16-17; 107 at 19-20. More importantly, it did not limit his ability to collaterally attack his sentence or conviction. Therefore, the language "except for ineffective assistance of counsel or prosecutorial misconduct" was not necessary to apprise Petitioner of his rights, and Phillips had no reason to advise Petitioner otherwise.

13

case, nor does Petitioner allege he told counsel he wished to do so. During the plea colloquy, the Court advised Petitioner of the elements of the offenses, the maximum penalties, and the rights he would be waiving by entering the plea, including the right to appeal the finding that he was guilty. (Criminal Case, Doc. 107 at 8-9, 13-21.) Petitioner affirmed he understood all this information and was freely and voluntarily entering the plea. (*Id*. 8-11, 13-21.) Petitioner also indicated that no one had coerced or pressured him to enter the plea or made any promises not contained in the plea agreement to induce his plea. (*Id.* at 10.) Petitioner affirmed he understood that if he entered the plea, he would not be permitted to withdraw it, even if he was displeased with the penalties imposed. (*Id.* at 18.) He further acknowledged the Court's admonition that by entering the guilty plea, Petitioner was not giving up his right to counsel at any stage of the proceedings, including any appeal he wished to take within the parameters of the plea agreement. (*Id.* at 21-22.) Thus, Petitioner should have been aware at the time of sentencing that he had the right to counsel for appellate purposes, even assuming Phillips told him he would have to withdraw if Petitioner appealed.[6]

---

[6] At sentencing, the Court notified Petitioner that he was entitled to the assistance of a lawyer for an appeal and that one would be provided for him if he could not afford one. (Criminal Case, Doc. 90 at 49.) By the time Petitioner questioned Phillips about his appeal options in April 2017, the time to appeal had expired. Phillips, therefore, reasonably could have believed that filing a late appeal would create a conflict of interest vis-à-vis ineffective assistance of appellate counsel. Finally, after sentencing, counsel sent Petitioner a letter in which he stated, "As we discussed and in light of the downward

14

Most importantly, Petitioner does not assert that he told counsel he was displeased with his plea or sentence, nor does he argue that his sentence could be appealed under the appeal waiver provision. Consequently, Petitioner's plea was voluntarily entered, and Phillips had no reason to advise Petitioner he could appeal the voluntariness of his plea or his sentence when Petitioner asked him about his appeal options. Thus, counsel's advice regarding Petitioner's appeal options was not incorrect.

Finally, Phillips' suggestion to Petitioner that he should again attempt to cooperate with the Government and then seek Rule 35 consideration was the strategy the defense noted at the sentencing hearing. *See* Criminal Case, Doc. 90 at 39-42 (Government noting that a 5K substantial assistance reduction was not ripe at the time of sentencing, and Phillips arguing that Petitioner was "first in the door, full cooperation, no holds bar, nothing held back" and explaining that Petitioner would continue to cooperate with the Government in an effort to obtain a Rule 35(b) sentence reduction). Petitioner opted to pursue a Rule 35(b) sentence reduction by proffering to the Government in September 2017. Petitioner does not indicate in either his Amended Motion to Vacate or his Response when exactly he

---

variance sentence, there will be no appeal." (Doc. 10-4 at 1.) Thus, Petitioner's contentions that he was unaware he could appeal his sentence and that he was displeased with his sentence are refuted. Consequently, Phillips' advice to Petitioner regarding his right to appeal his sentence was not incorrect and did not constitute ineffective assistance.

15

learned that no one else would be prosecuted in relation to the conspiracy. Instead, Petitioner simply notes that after his September 2017 proffer, "[i]t was later confirmed that other than a last minute, albeit poorly drafted, plea agreement offered to co-conspirator Dan Bogan, there were, in fact, no other attorneys or any other defendants other than [Petitioner] charged in this case as falsely represented by AUSA Rivera-Miranda." *See* Doc. 16 at 14.

The rationale in *Lanier v. United States*, 769 F. App'x 847 (11th Cir. 2019), a case similar to this one, is instructive. In *Lanier*, in seeking to toll the limitation period for filing his § 2255 motion, the petitioner alleged that "his trial counsel advised him not to file a § 2255 motion, but to wait for the government to file a Federal Rule of Criminal Procedure 35 motion. . . . [H]is counsel [also] told him that any attempt to appeal would void his plea agreement, and that he should wait until the one-year statute of limitations expired to file a § 2255 motion." 769 F. App'x at 849–50. In concluding that the district court's finding that Lanier did not exercise due diligence was not clearly erroneous, the Eleventh Circuit reasoned:

> Even if Lanier's attorney told him to wait until the statute of limitations period expired in November 2016, Lanier does not point to any effort to discover the relevant facts until November 2017. During this time, Lanier could have discovered with reasonable diligence that the government was not planning to file a Rule 35 motion. Lanier did not, for example, contact his attorney or the court about the Rule 35 motion, or about the effect of a § 2255 motion on any future Rule 35 motion or his apparent plea agreement. Lanier did not attempt to request from either his attorney or the court any documents related to his plea agreement until over a year after the

>statute of limitations expired. And by the time the statute of limitations expired, Lanier was no longer assisting the government. Given Lanier's complete inaction during that period, the district court did not clearly err in determining that he failed to act with due diligence.

*Id.* at 850.

Accepting the veracity of Petitioner's representations and applying the rationale of *Lanier*, the Court concludes that the facts supporting Ground Four could have been discovered by Petitioner with reasonable effort by June 29, 2018, at the latest. This is the date that Phillips learned from the Government that the investigation into the Professional Pain Center was closed and the Government would not be prosecuting Bogan or any other co-conspirator because the statute of limitations had run on the offenses.[7] *See* Criminal Case, Doc. 92 at 11 (Petitioner's May 20, 2019 Motion to Compel indicating that the Government had led Phillips to believe for several months after Petitioner's last proffer in September 2017 that it would be prosecuting Bogan, but the Government admitted to Phillips on June 29, 2018, that the statute of limitations had expired and Petitioner's cooperation would not be used to prosecute Bogan). Importantly, Petitioner does not allege that Phillips failed to notify him or withheld that the

---

[7] The facts supporting Grounds One through Three could have been discovered with the exercise of due diligence by February 16, 2017, the date Petitioner's conviction became final.

17

Government would not be prosecuting anyone else after Phillips learned this information.

Moreover, Petitioner clearly knew or should have known by June 29, 2018, that his last proffer with the Government was in September 2017, more than eight months prior, that the Government had not filed a Rule 35 motion, and that the plea agreement provided that the Government agreed to consider whether any cooperation Petitioner provided after sentencing warranted a sentence reduction, and if so, to file a Rule 35(b) motion within one year of the imposition of sentence. *See* Criminal Case, Doc. 3 at 5. Even if Phillips failed to advise Petitioner of his right to file a § 2255 motion and threatened to withdraw as counsel if Petitioner filed a direct appeal, Petitioner fails to point to any effort he made after his September 2017 proffer through July 1, 2019,[8] to discover whether the Government was filing a Rule 35 motion, to learn the facts underlying his claims, or to pursue a collateral action. In sum, under § 2255(f)(4), with due diligence Petitioner would have had through July 1, 2019, at the latest, to timely initiate this action.

The Court recognizes that on May 20, 2019, Petitioner, through Phillips, filed a Motion to Compel the Government to file a Rule 35 motion. Petitioner, however, was not prevented from pursuing a § 2255 action by the filing of the Motion to

---

[8] One year from June 29, 2018, was Saturday, June 29, 2019. Thus, if Petitioner's limitation period began to run on June 29, 2018, then Petitioner would have had through July 1, 2019, to timely file a § 2255 motion.

Compel. Further, for the reasons discussed above, Petitioner has not established that Phillips' abandoned or misled Petitioner. Consequently, Petitioner has not demonstrated that he pursued his rights diligently or that some extraordinary circumstance prevented him from timely filing a § 2255 motion. Accordingly, Petitioner is not entitled to equitable tolling, and this case is untimely.

Any arguments that attempt to excuse Petitioner's failure to file this action within the one-year period of limitations not addressed are without merit.

Accordingly, it is **ORDERED AND ADJUDGED** as follows**:**

1. Petitioner's Amended Motion to Vacate, Set Aside, or Correct Sentence (Doc. 9) is **DENIED,** and this case is **DISMISSED** with prejudice**.**

2. Respondent's Motion to Dismiss (Doc. 14) is **GRANTED.** The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3. The Clerk of the Court is directed to file a copy of this Order in criminal case number 6:16-cr-180-RBD-RMN.

4. This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to

make a substantial showing of the denial of a constitutional right.[9]

Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE** and **ORDERED** in Orlando, Florida on April 27, 2023.



ROY B. DALTON JR.
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[9] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *Rules Governing Section 2255 Proceedings for the United States District Courts*, Rule 11(a).